**NATIONAL VENTILATED AWNING CO.
et al. v. FARM EQUIPMENT CO.,
Inc. et al.**

Civ. No. 1760.

United States District Court
N. D. Texas, Fort Worth Division.

Dec. 16, 1950.

Carrington, Gowan, Johnson & Walker, Dallas, Tex., and Ely & Frye of Akron, Ohio, for plaintiff National Ventilated Awning Co.

Fulbright, Crooker, Freeman & Bates, Houston, Tex., for plaintiff Slats-O-Wood Awning Co.

Terry & Cohn, St. Louis, Mo., and Herbert J. Brown, Fort Worth, Tex., for defendants Farm Equipment Company, Inc., Jack Corn and Kool Vent Metal Awning Corporation.

DOOLEY, District Judge.

The Court hereby makes and files in above cause Findings of Fact and Conclusions of Law, as follows:

Findings of Fact.

I.

The plaintiff The National Ventilated Awning Company (NVA), a Texas corporation, offices at Dallas, Texas; the plaintiff Slats-O-Wood Awning Company (SOW), a Texas corporation, offices at Houston, Texas, and as transferee has been substituted for the original plaintiff Haw-

ley Manufacturing Company (HMC), recently dismissed; the defendant Farm Equipment Company (FEC), a Texas corporation, offices at Fort Worth, Texas; the defendant Jack Corn, President of FEC, also does business as Corn Aluminum Awning Company and is a resident of Fort Worth, Texas. The Kool Vent Metal Awning Corporation of America (KVA), is a Pennsylvania corporation.

## II.

This Court has jurisdiction of the parties and the subject matter of this cause.

## III.

On February 9, 1937 Letters Patent No. 2,069,893 was issued to Albert T. Matthews of Georgia, on an application filed December 7, 1932, for an invention relating to awnings. On February 7, 1939, the said Letters Patent was surrendered, and on April 18, 1939 Reissue Letters Patent No. 21,053 was duly granted to said Albert T. Matthews, with an undivided one-half interest therein assigned to Thornton T. Graham of Ohio.

## IV.

In September 1930, some time after Matthews had first conceived the invention of the aforesaid patent, he made and installed on a window at his home in Georgia an awning embodying such invention, but it was for experimental purposes only, and said installation did not constitute public use more than two years prior to the filing of the original application for said patent.

## V.

On March 6, 1940, the said Matthews and Graham granted to Joe W. Hawley an exclusive license in writing, (plaintiffs' Exhibit 4) for the manufacture, sale and use of awnings embodying the invention of said patent within the States of Texas, Louisiana, Oklahoma and Arkansas, and, by mesne assignments, said license passed to the dismissed plaintiff HMC, and from it to the new plaintiff SOW.

## VI.

Effective January 1, 1949, the said Matthews and Graham sold and assigned to the plaintiff NVA the entire right, title and interest in and to said Reissue Letters Patent No. 21,053, including the right to recover for past and future infringements thereof, and the title thereto is now in the said plaintiff, and said plaintiff NVA also acquired and holds the licensors' interest and rights in and under the license from Matthews and Graham to Hawley, noted in the last above finding.

## VII.

The last mentioned license provides that in event said Matthews Letters Patent is infringed the licensee shall call such fact to the attention of the licensors, "and if the licensors bring suit to enjoin such infringement, all costs of such suit shall be borne by the licensors and all money recoveries obtained therein shall be retained by the licensors".

## VIII.

The said Reissue Patent No. 21,053 relates to the construction of permanent ventilated awnings designed to supplant the old and well known canvas type of awning, and the patented structure has had marked commercial success and numerous licenses have been granted thereon throughout the United States.

## IX.

The plaintiffs allege that claims 3, 4, 5, 9 and 10 of the said patent have been and are being infringed by the said defendants.

## X.

The defendants have manufactured and sold, prior to the filing of this suit, three different types of ventilated awnings, referred to as the "Original", "Intermediate", and "Current" awnings, which are shown in plaintiffs' Exhibits 14, 18 and 15.

## XI.

The defendants have set up a number of prior art patents, both domestic and foreign, placing particular reliance on the Morein United States Patent No. 439105 and Brisbane No. 57080, and the Gribbon British Patent No. 7118, but none of the cited patents, either singly or in combination with any other of said patents, anticipates or detracts from the Matthews invention, or invalidates the claims in suit, as settled by stare decisis.

108

## XII.

The awnings of one Heflin, relied on by defendants to show prior use anticipating the Matthews patent, do not sustain said defense, and same were first constructed and came into use in or about the year 1935.

## XIII.

The patent in suit and particularly the above claims thereof are valid.

## XIV.

The three types of awnings aforesaid manufactured and sold by the defendants all infringe the said several claims of the patent in suit.

## XV.

Awnings manufactured and sold under the said patent by plaintiffs' licensees have carried the statutory notice of the patent, and furthermore the defendants have been notified by plaintiff of the infringement of the patent.

## XVI.

Under the terms of a written contract between them dated May 1, 1949 (plaintiffs' Exhibit 29), the KVA in writing assigned and transferred to the Continental Illinois National Bank & Trust Company, in the dual capacity of trustee and escrow agent, all of its patent and trademark property, including the Houseman Reissue Letters Patent 20,975, and contemporaneously said trustee executed an assignment and transfer of the same property to the plaintiff NVA, whereupon said executed assignments, together with an unexecuted assignment and transfer reading from said trustee to KVA for the same property, together with other papers in connection with the transaction, were put and continue in the custody of said escrow agent, however, NVA presently became owner of said properties during the remaining life of the said Matthews patent, subject to contingencies which determined whether NVA permanently remained owner or said properties would revert to KVA at the term end of said patent, and NVA at the same time granted to KVA a license to sub-license others for the purpose of manufacturing and selling awnings and other structures of the "Kool Vent type" under the Matthews patent already owned by NVA and under the Houseman and other patents just then acquired from KVA.

## XVII.

Under the authority of said contract KVA, acting in concert with the plaintiff NVA, executed and delivered about 20 licenses, containing the provisions of plaintiffs' Exhibit 31, to different awning manufacturers in various parts of the country; but none for any territory in either Texas, Oklahoma, Arkansas or Louisiana.

## XVIII.

In the particular that said Exhibit 31 describes "a structure referred to as 'jammed' wherein ventilation is excluded", said license embraced articles old in the art and long in the public domain.

## XIX.

Under date of November 2, 1949, KVA sent to each of its licensees, by registered mail, a notice in the text of plaintiffs' Exhibit 33.

## XX.

The plaintiff SOW concededly cannot stand immune to the impediment raised by any misuse of the patents in question chargeable to NVA.

## XXI.

The plaintiff NVA has been and is misusing its patents as more fully stated in the second conclusion of law herein.

## XXII.

Under date of November 16, 1950, after the trial proper herein, and while the findings and conclusions, including the point of said patent misuse, as well as terms of the decree were in course of settlement, NVA sent to KVA a telegram (plaintiffs' Exhibit 50), confirming the same by letter, ostensibly to purge any such misuse of its patents reflected in the terms of the plaintiffs' Exhibits Nos. 29 and 31 respectively, but said purported purge is illusory, since the plaintiff, instead of acknowledging any wrong doing or coming forward with any amends, does no more than it would be bound to do anyway, that is professes to make no claim beyond the limits of its patents when properly construed, but proposes doing nothing towards presently changing

its course in response to the Court's then known determination that it was misusing the patents when properly construed, and in spite of said continuing conduct asks an injunction judgment against the defendants, thus shifting to the defendants the burden of determining by appeal whether this Court is right in holding that the plaintiff NVA has misused the patents.

### Conclusions of Law.

#### I.

 The Matthews Reissue Patent 21,053 as to the claims here in question is good and valid in law.

#### II.

 Under the terms of said KVA license agreement, Exhibit 31, and in particular paragraph 1 sub-paragraphs a and b, paragraph 3 sub-paragraphs a and b, paragraph 7 sub-paragraph a, paragraph 9 sub-paragraph a, and paragraph 13 sub-paragraph c, the licensee is prohibited from manufacturing and selling awnings as therein defined having top structures made up of strips, and within that part of the "Kool Vent" awning description covering "a structure referred to as 'jammed', wherein ventilation is excluded", except with a Kool Vent decal attached and within the limited territory named in the license, and subject to the stipulated royalty.

#### III.

A licensee accordingly who makes such unventilated awnings so defined is not at liberty under the terms of the license agreement, to sell the same freely and at large anywhere in the country, and that would be true even if he ignored the provision that the Kool Vent decal be attached.

#### IV.

The Houseman Reissue Patent No. 20,975 contains no claim, which, properly construed in the light of the specifications and drawings, applies to or covers such an awning of the so-called "jammed" top construction wherein ventilation is excluded, coming within the terms of said license, and NVA has not claimed such a patent monoply under any of its other patents.

#### V.

 The plaintiff NVA has misused the rights granted under the Matthews and Houseman patents by seeking to reap monopoly benefits outside and beyond those within the scope of said patents, and to interfere with trade and commerce in a class of awnings and other articles properly subject to free and unlimited competition.

#### VI.

In accordance with the usages of equity, the plaintiff NVA may not recover against the defendants herein presently, and this cause on the part of both plaintiffs should be dismissed without prejudice to a later suit whenever the plaintiff NVA shall have purged itself of wrongful usages and practices in respect to the Matthews and Houseman patents.